IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAN HAVEL, and | § | |
| DEAN RUCK, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1291 |
| | § | |
| | § | |
| | § | |
| DENTSU MCGARRY BOWEN UK LTD., | § | |
| ROGUE FILMS LTD., AND DOES 1-3, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.     Background**

Houston artists Dan Havel and Dean Ruck sued a New York advertising agency along with several London-based firms in Texas federal court for using images of their copyrighted sculpture in a Honda CR-V commercial that aired in Europe.  The court dismissed several defendants for lack of personal jurisdiction, but two—McGarry Bowen UK and Rogue Films—remain.  The plaintiffs dispute the defendants' assertion of attorney-client privilege over four emails produced in jurisdictional discovery.  (Docket Entry No. 37, at 19 n.4).  The emails were exchanged among the defendants' non-lawyer employees about the possible legal consequences of using the plaintiffs' art in the commercial.

Based on a careful review of the defendants' bench brief, the documents submitted *in camera*, the record, and the applicable law, this court finds and concludes that the defendants must produce the July 30, 2012 email (along with its forwarded content) from Paul Jordan to

1

\

caryndesign@gmail.com, an unidentified third party. *See* Ex. A (filed under seal with court), PR00000069. The remaining email communications are protected under the privilege and need not be produced.

The reasons are explained below.

## II. The Legal Standard for Attorney-Client Privilege

Federal Rule of Evidence 501 governs a claim of attorney-client privilege in federal court. Under Rule 501, the federal common law of privilege generally applies to cases in federal court. But the rule also states that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law." FED. R. EVID. 501. Federal privilege law governs in a federal question case involving only federal law and state privilege law applies in a diversity case involving only state law. *See Gilbreath v. Guadalupe Hosp. Found., Inc.*, 5 F.3d 785, 791 (5th Cir. 1993) (applying federal privilege law in federal-question case); *In re Avantel, S.A.*, 343 F.3d 311, 318 n.6 (5th Cir. 2003) (applying Texas attorney-client privilege law in diversity case). When state-law claims are present in a federal-question case under the federal court's supplemental jurisdiction, however, "it is not immediately clear what law should apply." *Garza v. Scott and White Mem'l Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005). Neither the Supreme Court nor the Fifth Circuit has resolved this issue. The Supreme Court has recognized the problem but declined to address it. *See Jaffee v. Redmond*, 518 U.S. 1, 17 n.15 (1996) (declining to decide "the proper rule in cases . . . in which both federal and state claims are asserted in federal court"). The defendants argue that federal law on attorney-client privilege applies and prevents the disclosure of the materials that the plaintiffs seek to discover.

2

\

Under federal common law, a party asserting attorney-client privilege must establish: "(1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). Texas Rule of Evidence 503 is similar. Under both federal common law and Rule 503, the client, not the client's attorney, is the holds the privilege. *See In re Grand Jury Subpoenas*, 561 F.3d 408, 411-12 (5th Cir. 2009); TEX. R. EVID. 503(b)(1).

A party asserting a privilege bears the burden of demonstrating its applicability. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). A privilege claimant's burden "extends to proof of preliminary facts showing that the matter is eligible for protection." *Id.* at 710 n.7. Federal Rule of Civil Procedure 26(b)(5) provides that a party claiming a privilege must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5). Compliance with Rule 26(b)(5) is "usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter. . . ." *Santa Fe*, 272 F.3d at 710 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 21.431 (1995)).

"The attorney-client privilege may attach to communications between nonlegal employees where: (1) 'the employees discuss or transmit legal advice given by counsel;' and (2) 'an employee discusses her intent to seek legal advice about a particular issue.'" *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011) (quoting *United*

*States* v. *ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002)); *see also McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) ("Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege.").

The first category of privileged communications between nonlegal employees is not applicable here. The rationale for protecting the second type of nonlawyer communications is straightforward:

> Materials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer—notes which could serve as an agenda or set of reminders about things to ask or tell counsel. It would undermine the purpose of the attorney-client privilege not to extend protection to such notes. Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected.

*ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077. "[T]he key question in such cases is whether the 'dominant intent is to prepare the information in order to get legal advice from the lawyer.'" *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-cv-1190, 2010 WL 5014483, at *2 (S.D. Ohio Dec. 3, 2010) (quoting *In re New York Renu with Moistureloc Product Liability Litigation*, 2008 WL 2338552, *10 (D.S.C. May 8, 2008)); *see also White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1269 (D. Kan. 2008) (stating that "the party asserting the privilege" over "written communication between corporate management employees" "must be able to establish the communication was made in confidence for the primary purpose of obtaining legal advice even though not a direct communication from or to counsel").

"[T]he presence of a third person when communications are made, or the disclosure of an otherwise privileged communication to a third person, eliminates the intent for confidentiality on

\   4

which the privilege rests." *In re e2 Commc's, Inc.*, No. 02-30574-BJH-11, 2006 WL 6510985, *5 (Bankr. N.D. Tex. June 15, 2006); *see also In re Subpoena v. Curran*, 2004 WL 2099870 (N.D.Tex. 2004). "Disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *In re e2 Commc's, Inc.*, 2006 WL 6510985, at *5 (citing *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982)). "The privilege is not, however, waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Id.* (citing *El Paso Co.*, 682 F.2d at 539; *Hodges, Grant 7 Kauffman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).

**III.   Analysis**

The plaintiffs dispute the defendants' assertion of privilege over four email communications between nonlawyers in late July 2012. The privilege log describes each as an "Email among or between Defendants re: Havel & Ruck and exchange and gathering of information to obtain legal advice." (Docket Entry No. 37-9, at 2). The plaintiffs dispute this characterization. The court reviewed the emails *in camera*. *See* Ex. A.

The review shows that on Friday, July 27, Helen Whiteley, McGarry Bowen UK's producer, forwarded an email chain to Simon North (the company's Executive Vice Chairman) and Richard Oakes (the Honda Account Executive). *See* Ex. A, PR00000094. On Monday, July 30, Whiteley forwarded a different email to several McGarry Bowen creative team members. *See id.*, PR00000036. Later that day, Paul Jordan, a creative director, forwarded Whiteley's second email to Max Spencer and "caryndesign@gmail.com," an unidentified third party. *See id.*, PR00000069. Finally, on Tuesday, July 31, Remco Graham, another creative director, replied to Whiteley's second email. *See id.*, PR00000037.

The defendants argue that the four emails are protected because they were made in preparation for consultations with attorneys. After careful *in camera* review, the court agrees in part. The "dominant intent" of three out of four emails was "to prepare the information in order to get legal advice from the lawyer." *Comtide Holdings*, 2010 WL 5014483, at *2 (quotations omitted). The first and fourth emails—sent by Whiteley and Graham, respectively—expressly mentioned seeking legal advice. *See* Ex. A, PR00000094, PR00000037. Whiteley's second email did so implicitly and furthered the pursuit of that advice. *See* Ex. A, PR00000036. All three communications were "made in confidence for the primary purpose of obtaining legal advice even though not a direct communication from or to counsel." *White*, 586 F. Supp. 2d at 1269. The content of the emails themselves shows that these communications are privileged. *Cf. Datel Holdings*, 2011 WL 866993, at *6 ("There are no communications with lawyers in the email chain, nor is there *any further reference to legal advice* about Datel." (emphasis added)).[1]

The third email, which Jordan forwarded to two design members with the added words, "[h]ere you go," was not clearly intended to gather or prepare information in order to seek legal advice. Ex. A, PR00000069. Its contents are not privileged. *See Comtide Holdings*, 2010 WL 5014483, at *3 (communications between nonlawyers were not privileged because the evidence "equally support[ed] an inference that the communication either was, or was not, related to the subsequent request for legal advice.").

---

[1] The plaintiffs argue that the lack of any contemporaneous email communication with counsel documented in the privilege log prevents the defendants from asserting privilege as to these emails. But the defendants' log shows that they eventually communicated with counsel, and they may have communicated even sooner in a different medium. *Cf. Datel Holdings, Ltd.*, 2011 WL 866993, at *6 (no privilege where the defendant made "no showing that the results of the investigation were *ever conveyed to counsel*." (emphasis added)).

The remaining issue is whether Whiteley's second email, the privileged communication that Jordan forwarded, is no longer protected in light of Jordan's disclosure to "caryndesign@gmail.com." The plaintiffs argue that the defendants forfeited or waived any privilege by sending the email to this unidentified third party. The defendants contend that this does not waive privilege because the third party was an independent contractor "with a significant relationship to the corporation and the corporation's involvement in the transaction that is the subject of legal services." *In re Bieter, Co.*, 16 F.3d 929, 937 (8th Cir. 1994); *see also In re e2 Commc's, Inc.*, 2006 WL 6510985, at *5 ("The privilege is not, however, waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication.").

In *In re e2 Communications*, the court required the plaintiffs to produce emails with "unidentified third parties somewhere in the email forwarding chain" because the plaintiffs "failed to identify by role or affiliation several people whose names appear in the email chains." 2006 WL 6510985, at *7. Although the defendants assert that the gmail address belongs to an independent contractor with a significant role in the events at issue, the defendants have not identified that person or the involvement in the project. Without more information, "the [c]ourt is simply unable to assess whether or not [his or her] presence has destroyed any privilege." *Id.* Neither Jordan's email nor its forwarded content is protected under the privilege.

## III.    Conclusion

The plaintiffs' request to compel production of the four emails is denied in part and granted in part. The defendants must produce the July 30, 2012 email (including its forwarded content) from Paul Jordan to caryndesign@gmail.com and Max Spencer. *See* Ex. A, PR00000069. The

production must take place by February 6, 2015. The other email communications from late July 2012 that do not appear in the forwarded email are protected as privileged and need not be produced.

SIGNED on September 30, 2014, at Houston, Texas.

                                        Lee H. Rosenthal
                                     United States District Judge